# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| GEORGE RAYMOND WILLIAMS, M.D., ORTHOPAEDIC SURGERY, A PROFESSIONAL MEDICAL L.L.C. | CIVIL ACTION NO. 6:11-cv-00050 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| BESTCOMP, INC., ET AL. | MAGISTRATE JUDGE MARK HORNSBY |

## MEMORANDUM JUDGMENT

Plaintiff, George Raymond Williams MD Orthopaedic Surgery, individually and as a putative class representative, has filed this Motion to Remand, asserting that this matter falls within the "local controversy exception" to the Class Action Fairness Act ("CAFA") (28 U.S.C. § 1332(d)(4)(A)) [Record Document 5].  Also pending are Motions to Strike Exhibits to Plaintiff's Motion to Remand filed by Defendants, Advantage Health Plans, Inc. ("Advantage Health") [Record Document 21], CCMSI Holdings, Inc. ("CCMSI") [Record Document 27], and Bestcomp, Inc. ("Bestcomp") [Record Document 30].  For the reasons enunciated below, this Court holds that this matter does fall within the "local controversy exception" to CAFA and that remand is mandatory.  Therefore the Court **GRANTS** Plaintiff's Motion to Remand [Record Document 5] and **DENIES** Defendants' Motions to Strike [Record Documents 21, 27, and 30].  All other pending motions are **DENIED** as moot [See Record Documents 7, 8 and 13].

## I.      Factual Background and Procedural History

The removal of this case by Defendant, StrataCare, LLC, is this case's second trip to federal court.  Originally filed in state court, the case was removed by Defendant, Bestcomp, but remanded for lack of subject matter jurisdiction when Bestcomp sought bankruptcy protection.  Williams v. Bestcomp, Inc., 09-1989, Rec. Doc. 40 (W.D. La. May 27, 2010).  After Plaintiff had amended its pleadings to add additional defendants (including StrataCare, LLC) and after Bestcomp dismissed its bankruptcy proceedings, this case was removed once more.  Plaintiff now again seeks remand.  Reviewing the factual and procedural history of this case in more detail will assist in understanding the Court's opinion in this matter.

Plaintiff, George Raymond Williams MD Orthopaedic Surgery, filed a Petition for Damages and Class Certification against Bestcomp in the 27th J.D.C., St. Landry Parish, Louisiana on September 30, 2009.[1]  Plaintiff brings its claims on behalf of itself and as a representative of similarly situated health care providers.  Plaintiff defines the "Plaintiff Class" as:

> All medical care providers who have provided services to workers'
> compensation patients, as contemplated in LA. R.S. 23:1021 et seq., and
> whose bills have been discounted after January 1, 2000 pursuant to a
> Preferred Provider Organization agreement, as defined in La. R.S.
> 40:2202, by or through [Defendants].

---

[1]This action is one of many related actions arising out of alleged violations of the Louisiana Preferred Provider Organization Act, La. R.S. 40:2201, et seq., brought by Plaintiff on behalf of persons similarly situated.  See Williams v. Executive Risk Specialty Ins. Co., 2011 WL 2461346 (W.D. La. June 17, 2011) (Melancon, J.); Williams v. Mor-Tem Risk Management, 11-cv-0026 (Foote, J), on second removal, 11-cv-1408 (Melancon, J.).

(First Amended and Restated Petition ¶ XI).  Plaintiff's Amended Petition states that the Plaintiff Class "consists of health care providers in the State of Louisiana" who have had their workers' compensation medical bills discounted "for medical services rendered within the state of Louisiana."  (Id. ¶¶ V, VI).

Plaintiff alleges that Bestcomp entered into Preferred Provider Organization ("PPO") agreements with Louisiana medical care providers pursuant to the PPO Act, La. R.S. 40:2201, et seq., for discounted rates of pay for medical services rendered by the providers.  Plaintiff alleges that Bestcomp failed to comply with the notice provisions of the PPO Act, La. R.S. 40:2203.1(B).[2]

---

[2]La. R.S. 40:2203.1(B) provides:
> A preferred provider organization's alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement or agreements and presented to the participating provider when medical care is provided. When more than one preferred provider organization is shown on the benefit card of a group purchaser or other entity, the applicable contractual agreement that shall be binding on a provider shall be determined as follows:
>> (1) The first preferred provider organization domiciled in this state, listed on the benefit card, beginning on the front of the card, reading from left to right, line by line, from top to bottom, that is applicable to a provider on the date medical care is rendered, shall establish the contractual agreement for payment that shall apply.
>> (2) If there is no preferred provider organization domiciled in this state listed on the benefit card, the first preferred provider organization domiciled outside this state listed on the benefit card, following the same process outlined in Paragraph (1) of this Subsection shall establish the contractual agreement for payment that shall apply.
>> (3) The side of the benefit card that prominently identifies the name of the insurer, or plan sponsor and beneficiary shall be deemed to be the front of the card.
>> (4) When no preferred provider organization is listed, the plan

Soon after the filing of the original Petition, Bestcomp filed for protection under Chapter 11 of the Bankruptcy Code and instituted an action in the United States Bankruptcy Court, Eastern District of Louisiana.  In re Bestcomp, Inc., No. 09-13953, (E.D. La. filed December 1, 2009).  Separately, Bestcomp removed this matter to the Western District of Louisiana.  Judge Haik, on May 27, 2010, remanded this matter for lack of subject matter jurisdiction.  Williams v. Bestcomp, Inc., 09-1989, Rec. Doc. 40 (W.D. La. May 27, 2010).  On October 26, 2010, the Bankruptcy Court dismissed Bestcomp's bankruptcy proceedings upon motion by Bestcomp.  (Pl.'s Mot. to Remand, Exhibit A, Order, In re Bestcomp, 09-13953 (E.D. La. Oct. 28, 2010)).

During the pendency of the bankruptcy proceedings, a Rule 2004 deposition of Bestcomp was conducted.  In that deposition, Plaintiff learned that StrataCare, LLC. ("StrataCare"), as a payor, contracted with Bestcomp for access to Bestcomp's PPO network and discounted rates for workers' compensation medical services.  (Def.'s Mot. to Remand, Exhibit B, Rule 2004 Deposition of Bestcomp, May 7, 2010, at 54-55, 94-96).  StrataCare also provided bill-review services to Bestcomp and CCMSI.  (Rule 2004 Deposition at 134).  Plaintiff also learned that Bestcomp's operations were conducted

---

sponsor or insurer identified by the card shall be deemed to be the group purchaser for purposes of this Section.
(5) When no benefit card is issued or utilized by a group purchaser or other entity, written notification shall be required of any entity accessing an existing group purchaser's contractual agreement or agreements at least thirty days prior to accessing services through a participating provider under such agreement or agreements.

significantly through Bestcomp's shareholders, CCMSI and Advantage Health.[3]   The

deponent in the Rule 2004 Deposition also indicated that CCMSI, like StrataCare, had

contracted with Bestcomp to provide discounted rates to CCMSI's payor clients.[4] (Rule

2004 Deposition at 54-55, 95).

On January 11, 2011, Plaintiff amended its Petition to name CCMSI, Advantage

Health, and StrataCare as additional Defendants.  In the Amended Petition, Plaintiff

generally alleges that Defendants violated the Louisiana PPO Act, La. R.S. 40:2203.1, by

discounting workers' compensation medical bills pursuant to PPO agreements without

providing notice as required under La. R.S. 40:2203.1(B).  Plaintiff alleges that all

Defendants are Group Purchasers under the PPO Act, La. R.S. 40:2202(3).[5]  Plaintiff

_____

[3]In the deposition, it was discovered that CCMSI provided the accounting and financial services for Bestcomp.  (Rule 2004 Deposition at 54, 57, 63, 125, 129). Advantage Health provided other services to Bestcomp to permit Bestcomp to fulfill its day-to-day functions.  The deponent stated that the "sole" person at offices of Bestcomp is the sole shareholder of Advantage Health.  (Rule 2004 Deposition at 67). The office space is provided by CCMSI and Advantage Health.  (Rule 2004 Deposition at 135).  The deponent further stated that "Bestcomp has never had an employee . . . since day one.  Both companies, Advantage Health Plans and CCMSI, were contracted to do all of the services for Bestcomp."  (Rule 2004 Deposition at 136).

[4]CCMSI also "marketed" Bestcomp's PPO network.  (Rule 2004 Deposition at 141).

[5]La. R.S. 40:2202(3) provides:
"Group purchaser" shall mean an organization or entity which contracts with providers for the purpose of establishing a preferred provider organization. "Group purchaser" may include:
(a) Entities which contract for the benefit of their insured, employees, or members such as insurers, self-funded organizations, Taft-Hartley trusts, or employers who establish or participate in self funded trusts or programs.
(b) Entities which serve as brokers for the formation of such contracts, including health care financiers, third party administrators, providers or

seeks statutory damages for the violations under La. R.S. 40:2203.1(G).[6]  (First

Amended and Restated Petition ¶¶ VII to X).  Additionally, Plaintiff alleges that

Advantage Health and CCMSI are liable to Plaintiff for the violations of La. R.S.

40:2203.1(B) by Bestcomp as the "alter egos" of Bestcomp.  (Id. ¶¶ XVI to LXXI).

Plaintiff further explains in its Motion to Remand that all claims asserted in this

matter arise out of Bestcomp's PPO agreements.  Plaintiff alleges that CCMSI and

StrataCare contracted with Bestcomp to pass Bestcomp's discounts to CCMSI's and

StrataCare's payor clients, respectively.  Plaintiff asserts that the claims against

StrataCare are limited to its liability arising from StrataCare's contracts with Bestcomp.

(Pl.'s Mot. to Remand at 6).  At Oral Argument on the Motion to Remand, Plaintiff

further contended that the claims in this action concern only the liability of the subject

Defendants, and that this liability concerned only the medical bills which were funneled

through the Bestcomp PPO Network.  (Official Transcript at 16, 30 [Record Document

103]).

On January 18, 2011, StrataCare removed this matter to the Western District of

Louisiana after Plaintiff amended its Petition to name the additional Defendants.

StrataCare asserts that this Court has jurisdiction over this matter pursuant to the Class

Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Plaintiff filed a Motion to Remand

---

other intermediaries.

[6]Section G of La. R.S. provides for mandatory damages against "group
purchasers" who violate Section B of La. R.S. 40:2203.1 of "double the fair market
value of the medical services provided, but not less than fifty dollars per day of non-
compliance or two thousand dollars, whichever is greater."  Section G also provides for
attorneys' fees to the healthcare providers.

[Record Document 5] asserting that remand is required under the "local-controversy exception,"  28 U.S.C. § 1332(d)(4)(A).

To its Motion to Remand, Plaintiff attached: (1) the Affidavit of Michelle Rankin (Pl.'s Mot. to Remand, Exhibit C) in which she states that, based on her comparison of Bestcomp's data (Exhibit C1) with the records available from a online search of the Louisiana Secretary of State's database (Exhibit C2), 87% of the healthcare providers who had their medical bills discounted by Bestcomp were listed as "Louisiana domiciliaries" by the Louisiana Secretary of State; (2) the Affidavit of Lauran Schultz, an employee with Hilsoft Notifications, in which she asserts that, based on her comparison of Bestcomp's data with the addresses for medical providers which were sent class notification by Hilsoft Notifications in a related class action, 91.4% of the medical providers with which Bestcomp took PPO discounts had addresses in Louisiana (Pl.'s Mot. to Remand, Exhibit D); and (3) the Rule 2004 deposition of Bestcomp in which Bestcomp's representative stated that at least 98% of the providers with whom Bestcomp had contracted were "from" Louisiana.  (Pl.'s Mot. to Remand, Exhibit B). Defendants request that this Court strike the Affidavits of Michelle Rankin (Exhibit C), the records from the Secretary of State (Exhibit C2), and the Affidavit of Lauran Shultz (Exhibit D).[7]

---

[7]Defendants Motions to Strike raise identical issues, and thus they are discussed together.  Exhibits C, C1, C2 and D are relevant to the first-prong of the local-controversy exception, i.e., that more than two-thirds of the putative class are Louisiana citizens.  Defendant, StrataCare, LLC, while not conceding that Plaintiff has met the first prong of 28 U.S.C. § 1332(d)(4), does not file a similar Motion to Strike.

## II.    Law and Analysis

The Class Action Fairness Act ("CAFA") provided a grant of original subject

matter jurisdiction to the federal district courts for class actions in which the matter in

controversy exceeds $5,000,000 and in which the class members are minimally diverse

from the defendants.  28 U.S.C. § 1332(d)(2).  CAFA, however, carved out the "local-

controversy" exception, 28 U.S.C. § 1332(d)(4)(A), and the "home-state" exception, 28

U.S.C. § 1332(d)(4)(B).  The local-controversy exception states that a district court <u>shall</u>

decline to exercise jurisdiction over a proposed class action if:

> (I) . . . —
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the state in which the action was filed;
> > (II) at least 1 defendant is a defendant —
> > > (aa) from whom significant relief is sought by members of the plaintiff class;
> > > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class;
> > > (cc) who is a citizen of the State in which the action was originally filed; and
> > (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons

28 U.S.C. § 1332(d)(4)(A).  Remand is appropriate if the party arguing for remand

shows by a preponderance of the evidence that the exception applies.  <u>Preston v. Tenet</u>

<u>Healthsystem Mem'l Med. Ctr., Inc.</u>, 485 F.3d 804, 810 (5th Cir. 2007) ("<u>Preston II</u>").

The Court finds that remand of this action is appropriate.  All elements of the

local-controversy exception's, as herein discussed, are met.  28 U.S.C. § 1332(d)(4)(A).

### A.   The Plaintiff Class is Composed of Over Two-Thirds of Louisiana Citizens

Plaintiff has shown by a preponderance of the evidence that over two-thirds of the individuals in the Plaintiff Class are Louisiana citizens.  The Amended Petition defines the purported class as "all medical care providers . . . whose bills have been discounted . . . pursuant to a Preferred Provider Organization Agreement, as defined in La. R.S. 40:2202," by Defendants.  By definition, the class only includes medical care providers who had their bills discounted pursuant to a PPO agreement for services to workers' compensation patients performed in Louisiana.  Nonetheless, this definition, by itself, does not limit the Plaintiff Class to only Louisiana citizens.  By defining the class as "all medical care providers"[8] without limitation to only Louisiana health care providers, the Plaintiff class may contain some non-Louisiana citizens.

However, Plaintiff need not show that the class is comprised of only Louisiana residents.  Rather, Plaintiff need only show that more than two-thirds of the purported class is comprised of Louisiana citizens by a preponderance of the evidence.  Preston v.

---

[8]The definition of the purported class in a related case was more limited.  In Williams v. Executive Risk Specialty Ins. Co., 2011 WL 2461346 (W.D. La.), the purported class was defined as "[a]ll Louisiana health care providers who have provided services to workers' compensation patients as contemplated in La. R.S. 23:1021 et seq. and whose bills have been discounted after January 1, 2000 pursuant to a Preferred Provider Organization agreement, as defined in La. R.S. 40:2202, by or through [Defendants]."  The purported class in this action is defined as "all medical care providers" – it is not limited to only "Louisiana health care providers."  It is not apparent why Counsel for Plaintiff limited the definition of the class in Executive Risk to "all Louisiana health care providers" while Counsel defined the class in this action as "all medical care providers."

Tenet Healthsys. Mem'l Med Ctr., Inc., 485 F.3d 793, 797 (5th Cir. 2007) ("Preston I").

"The court has wide, but not unfettered, discretion to determine what evidence to use

in making its determination of jurisdiction." Preston II, 485 F.3d at 817 (citations

omitted).  The Court is not limited to the pleadings and "may look to any record

evidence," including affidavits, deposition testimony or live testimony.  Coury v. Prot, 85

F.3d 244 (5th Cir. 1996).  The Court is further cognizant that, for purpose of

determining jurisdiction under CAFA, an unincorporated association is deemed to be a

citizen of the State where it has its principal place of business and the State under

whose laws it is organized.  28 U.S.C. § 1332(d)(10).

Defendants contend that Plaintiff has not met its burden to show that greater

than two-thirds of the medical providers in the proposed class are Louisiana citizens.

Defendants, Bestcomp, CCMSI, and Advantage Health, vigorously oppose consideration

by this Court of Exhibits C, C1, C2, and D in their Motions to Strike.  However, the Court

finds that Defendant's Motions to Strike must be denied.  The Court finds that the

evidence submitted by Plaintiff in support of its Motion to Remand, while subject to

some doubt as to their accuracy, are persuasive evidence that the composition of the

Plaintiff Class is well over the two-thirds threshold.

First, the Affidavit of Michelle Rankin, Exhibit C, is admissible under the Federal

Rules of Evidence.  Ms. Rankin did not conduct a complex analysis.  She took the data

provided in Exhibit C1, which listed the medical providers with whom Bestcomp applied

discounted rates.  She conducted a search of the medical providers in the Louisiana

Secretary of State's online database, attached as Exhibit C2.  The records which she

obtained from the Secretary of State list the medical provider's name, "type" (i.e.,

business corporation, limited liability company, registered limited liability partnership,

partnership, or non-profit corporation), "status" (i.e., active or inactive), "domicile"

address, and "mailing" address.[9]  Ms. Rankin counted those medical providers who were

"listed as Louisiana domiciliaries," or those who had Louisiana "domicile addresses."[10]

_____

[9]There are 22 records for "trade names" and "service marks" registered with the Louisiana Secretary of State.  The fields given for the trade name and service mark records are: "type registered," "registered name," "applicant" with the address for the applicant, "type of business," and "current status," among other fields.  All but one of the trade names or service marks are registered to entities who have addresses in Louisiana.  It is presumed that Ms. Rankin counted those trade names or service marks who were registered to Louisiana applicants as "Louisiana domiciliaries."  This conclusion is not legally warranted from the record.  Ms. Rankin should likely have taken the further step of identifying the Secretary of State record for the "applicant" to determine if it was a Louisiana registered or incorporated entity.

[10]Ms. Rankin does not state which field she looked at to make her determination that 447 of the medical providers "were listed as Louisiana domiciliaries."  The Court interprets Ms. Rankin's affidavit to indicate that she looked at the "domiciliary addresses" of the various medical providers as stated in the records of the Secretary of State (Exhibit C2).  However, the Court believes that Ms. Rankin and Plaintiff should have actually looked at the "Type" field of the records from the Secretary of State for the various medical providers.  It appears to the Court, upon its own review of Exhibit C2, that foreign incorporated or registered entities are designated in the "Type" field by the flag "(Non-Louisiana)".  All entities without a designation of "(Non-Louisiana)" would be entities that are incorporated in or registered with the State of Louisiana and thus Louisiana citizens under 28 U.S.C. § 1332(d)(10).

For instance, on page 181 of Exhibit C2, Ville Platte Medical Center LLC is listed as Type "Limited Liability Company (Non-Louisiana)."  It's "domicile address" is 1209 Orange Street, Wilmington, DE 19801.  The record for Ville Platte Medical Center LLC is the only record which states in the "type" field that the entity is of the type "(Non-Louisiana)."  Further, the record for Ville Platte Medical Center LLC is the only record that contains a field indicating when the entity was "qualified."  All other records in Exhibit C2 (other than those for trade names and service marks) have a field indicating the entity's "file date" or "registered" date in place of a field for when the entity was "qualified."  The Court suspects that if the Type field does not include the flag "(Non-Louisiana)", then the entity is, according to the Secretary of State's records, registered or incorporated in Louisiana.

She determined that 447[11] (or about 87%) of the 511 medical providers "were listed as Louisiana domiciliaries."

The information from Bestcomp and the records from the Secretary of State are both admissible in their own right. Fed. R. Evid. 801(d)(2), 803(8).[12] While Defendants may be right that "domicile address" does not equal "domicile" under 28 U.S.C. § 1332(d)(10), because the Plaintiff Class is comprised of incorporated and unincorporated entities whose citizenship for purposes of CAFA are either its principle place of business or place of registration, the "domicile address" for these entities are at least indicative of citizenship.[13] Further, the fields "file" and "registered" dates on the

_____

The Court believes that an investigation by the parties into the actual meaning of the various fields on the Secretary of State's records would have permitted the Court to make a more conclusive finding as to the citizenship of the various entities.

[11]The Court, on its own review of Exhibit C2, counted a total of 434 entities (242 business corporations, 151 limited liability companies, 26 non-profit corporations, 5 registered limited liability partnerships, and 10 partnerships) which were incorporated in or registered with the State of Louisiana according to the Secretary of State records submitted. Mr. Filo, Counsel of Plaintiff, stated at the Oral Argument that there were 426 out of the 511 medical providers who were "in fact registered with the Secretary of State" according to the Secretary of State's records. (Official Transcript at 29 [Record Document 103]).

[12]The Court notes that the records from the Secretary of State's database are not "certified" and thus not self-authenticating. Fed. R. Evid. 902(4). Plaintiff relies on, as Exhibit C2, records obtained from the Louisiana Secretary of State's Database, at http://www.sos.louisiana.gov/tabid/819/Default.aspx. The records upon which Plaintiff relies are not certified records.

[13]In their Motions to Strike, Bestcomp, CCMSI, and Advantage Health each take issue with the same 15 records from the Secretary of State. Defendants rely on these 15 records as support that the Secretary of State's records as a whole are unreliable. Of these 15, Defendants object to 7 because the "mailing address" is outside Louisiana while the "domicile address" is in Louisiana. They object to 6 because the medical provider had not recently filed a report. They object to 1 because the entity's "domicile

various records indicate that all of the entities with "domicile addresses" in Louisiana

are actually incorporated or registered in Louisiana.  See supra fn.10.  Entities that are

_____

address" is outside Louisiana and the entity is listed as a "Non-Louisiana" "type."  They
object to one because it is listed as a "former" Texas corporation, it's website says it
conducts business primarily in New York and New Jersey, and because it is also a
subsidiary of another corporation and the affidavit fails to speak of that company's
citizenship.

 At the Oral Argument, Counsel for Advantage Health intimated that because of
financial resource concerns, Defendants were unable to conduct a full review of the
Secretary of State's records provided at Exhibit C2.  (Oral Argument, Official Transcript
at 73 [Record Document 103]).  The Court has conducted a full review of Exhibit C2.
The Court notes the following: (1) 86 business corporations, limited liability companies,
and non-profit corporations were "active" but "not in good standing" for failure to file
annual reports; (2) 40 entities were "inactive" because of secretary of state action (e.g.,
the revocation of their certificate of incorporation); (3) 28 entities had been dissolved
by affidavit or notice; (4) 3 entities had been merged into another entity; (5) 4 entities'
term of existence had expired; (6) 1 entity was simply listed as "terminated"; (7) 16
entities had "mailing addresses" outside Louisiana although they had "domicile
addresses" in Louisiana; (8) 1 entity had a "domicile address" outside Louisiana; and (9)
1 trade name was registered to an entity outside of Louisiana.

 First, of the 86 entities which are "active" but "not in good standing" because
they failed to file annual reports with the Secretary of State, the entities' delinquency
does not indicate that the information is more or less accurate.  The entities remain
Louisiana entities although not in good standing.  Second, the "mailing addresses" of
the 16 entities which had such addresses outside Louisiana do not indicate that the
entity is a non-Louisiana citizen.  Third, the action taken against the 40 entities which
were "inactive" due to secretary of state action, the 28 entities that had been dissolved
by affidavit or notice, the 4 entities whose terms of existence had expired, and the 1
entity which was "terminated" indicates that the entities were in-fact incorporated in
Louisiana prior to their date of inactivity.  See Harris v. Black Clawson Co., 961 F.2d
547, 551 (5th Cir. 1992); see also La. R.S. 12:148© (dissolved entities maintain
existence for purpose of pursuing action by the corporation).  Therefore, these apparent
discrepancies in Exhibit C2 upon close analysis do not diminish the probative nature of
the records.

 Of course, the entity with a "domicile address" outside Louisiana and the trade
name registered to an entity outside Louisiana certainly cannot be included as entities
who are Louisiana citizens.  It does not appear that Ms. Rankin included these records
in her total count.  The Court likewise does not include these evident non-Louisiana
entities in its total count.

incorporated or registered in Louisiana are Louisiana entities for purposes of CAFA.  28 U.S.C. § 1332(d)(10).

Second, the affidavit of Lauran Schultz is likewise admissible.  The affidavit is based on Ms. Schultz's personal knowledge.  She made a personal review of the addresses to which her employer mailed class notices in related class actions.  While these mailing address alone do not equate with citizenship, for medical providers practicing in Louisiana, it is at least indicative of citizenship.[14]

Admittedly, the figures from Ms. Rankin (87%) and Ms. Schultz (91.4%) are subject to some uncertainty, and the Court attributes weight to these figures accordingly.  However, these figures are well above two-thirds.  Defendant offers no evidence which contradicts Plaintiff's analysis.  Defendant only raises speculative arguments regarding the data.  The fact that Bestcomp's representative stated that

---

[14]Defendants cite to HMB Interests, LLC v. Chesapeake La. L.P., 2010 WL 3604008 (W.D. La. Sept. 7, 2010) (Walter, J.) for support that an address is not indicative of citizenship.  In HMB Interests, the proposed plaintiff class included "all persons and entities who signed mineral leases" affecting certain parishes in Louisiana.  Id. at *2.  Judge Walter found that the Plaintiffs had not shown that the proposed class, which was not restricted "homeowners" in Louisiana but only restricted to individuals/entities who signed leases affecting Louisiana land, was composed of over two-third of Louisiana citizens.  Judge Walter distinguished that case from Caruso v. Allstate Inc. Co., 469 F. Supp. 2d 364 (E.D. La. 2007) (Vance, J.), in which the district court made a common sense presumption that a class limited to "Louisiana homeowners" was composed of more than two-thirds Louisiana citizens.  This case is clearly distinguishable from HMB Interests.  The class here is not composed of the "business owners" but rather of the "businesses" themselves.  The businesses, as is shown by the Secretary of States records, are predominantly incorporated or registered in Louisiana.

98% or more of its contracts were "from" Louisiana is further confirmatory proof that over two-thirds of the Plaintiff Class is Louisiana citizens.[15]

The burden is on the Plaintiff to show that the local-controversy exception applies.  Given the evidence before the Court, it is highly unlikely that one out of three (or more) providers in the proposed class are non-Louisiana citizens.  Accordingly, the Court finds that the Plaintiff Class is comprised of over two-thirds of Louisiana citizens by a preponderance of the evidence.

### B.    Bestcomp is a "Significant Defendant"

Plaintiff contends that Defendant Bestcomp, an admitted Louisiana citizen, is a defendants from whom "significant relief is sought" and whose "alleged conduct forms a significant basis" for the claims of the Plaintiff Class.[16]  While CAFA does not specifically provide a definition of "significant," see, e.g., Caruso v. Allstate Ins. Co., 469 F. Supp. 2d 364, 368 (E.D. La. 2007) (Vance, J.), precedent indicates that the significance on any one defendant is a matter of degree to be judged vis a vis the relief sought against and the conduct of the other defendants named in the class action.  See, e.g., Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 157 (3d Cir. 2009) (holding that a substantive analysis of the local defendant's alleged conduct to the alleged conduct of all defendants is required); Evans v. Walter Indus., Inc., 449 F.3d 1159, 1167 (11th Cir.

---

[15]Admittedly, Bestcomp's admission that 98% of the providers with whom Bestcomp contracted are "from" Louisiana does not mean that 98% are "citizens" of Louisiana.  However, Bestcomp's admission is further support for the Court's finding.

[16]Because the Court finds that Bestcomp is a significant defendant for purposes of 28 U.S.C. § 1332(d)(4), the Court does not address whether Advantage Health or CCMSI are significant defendants or Louisiana domiciliaries.

2006) (holding that "significant relief" is sought is determined by whether the relief sought against that defendant is significant relative to that sought against the other co-defendants); <u>Robinson v. Cheetah Transp.</u>, 2006 WL 468820, *3 (W.D. La. Feb. 27, 2006) (Hayes, M.J.) ("[W]hether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment."); <u>Kearns v. Ford Motor Do.</u>, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005) (holding "relief must be measured with respect to that sought by the entire class"); <u>see also</u> <u>Coleman v. Estes Exp. Lines, Inc.</u>, 631 F.3d 1010, 1017-19 (9th Cir. 2011) (holding determination of whether defendant is "significant" should be made based on the Complaint); <u>Coffey v. Freeport McMoran Copper & Gold</u>, 581 F.3d 1240, 144-45 (10th Cir. 2009) (dismissing <u>Robinson</u>, <u>supra</u>, and holding "relief sought" does not mean "relief could be obtained").

It is clear that the Plaintiff class seeks significant relief against Bestcomp.  If Bestcomp is found to have violated La. R.S. 40:2203.1(B), Plaintiff is entitled to recover significant statutory damages under La. R.S. 40:2203.1(G).  Plaintiff alleges that the Plaintiff Class is composed of hundreds of medical providers, each of whom likely has multiple claims for violations against Bestcomp.  During the bankruptcy proceedings for Bestcomp in the Eastern District of Louisiana, Plaintiff filed a proof of claim on behalf of the putative class for $61,546,500.  The amount of the putative classes claim against Bestcomp is clearly not, in isolation, "small change."

Second, Bestcomp's conduct in taking discounts without proper notice within its PPO network forms a significant basis for the claims asserted by the proposed plaintiff class.  In its Motion to Remand, Plaintiff states that all the claims in this case in this case involved Bestcomp PPO discounts taken in violation of La. R.S. 40:2203.1.[17]  The Amended Petition does appear to limit its claims against CCMSI and Advantage Health to only those claims that arise out of Bestcomp's PPO discounts.  The Petition alleges that CCMSI acted as a third-party administrator to provide services to payors through Bestcomp's PPO network, (First Amended and Restated Petition ¶ VII.C), and that Advantage Health entered into PPO agreements on behalf of Bestcomp (Id. ¶ VII.B).  However, the Amended Petition, on its face, is not as limited as Plaintiff contends against StrataCare.  The Amended Petition alleges that StrataCare has entered into PPO agreements "on its own behalf" with Louisiana providers, effectively sidestepping the services which are provided by Bestcomp.  (Id. ¶ VII.D).  However, given the Amended Petition and Plaintiff's affirmative representations in its briefs and at oral argument, it is apparent that this lawsuit is concerned solely with the violations of La. R.S. 40:2203.1

---

[17]Plaintiff reiterated this point at Oral Argument, suggesting that the claims against the various defendants only involve those PPO discounts that were "funneled" through Bestcomp's PPO network.  Mr. Filo, Counsel for Plaintiff, stated that the Bestcomp PPO discounts were "actually all this lawsuit is about" and that he though "if you read the petition, that's what it says."  (Official Transcript at 86 [Record Document 103]).

by and through Bestcomp's PPO Net Network.[18]  Thus, Bestcomp's conduct is at the

center of this dispute.[19]

The Court's position that Bestcomp is a "significant defendant" is bolstered by

the Fifth Circuit's recent opinion in Williams v. Homeland Ins. Co. of New York, No. 11-

30646, 2011 WL4346714 (5th Cir. Sept 19, 2011).  In this case, the plaintiff Williams

(the same plaintiff as in the instant suit) filed suit against Med-Comp, the operator of a

medical preferred provider organization network (a "PPO").  The suit also included as

defendants other companies which applied Med-Comp's PPO discounts in their

administration of claims. Id. at *1.  These facts mirror those of the instant suit.  Plaintiff

likewise sought remand of the suit under the local controversy exception and

---

[18]StrataCare expressed concern at Oral Argument that the claims against it in this lawsuit overlap with claims asserted against StrataCare by third-party plaintiffs in other lawsuits.  However, the Court did not hear StrataCare express concern that liability would be assessed against it in this lawsuit for violations of the Louisiana PPO Act associated with separate PPO networks.  None of the Defendants seemed to express a similar concern.  It is the Court's understanding that Defendants are exposed to liability in this lawsuit for their own liability for the violations of the PPO Act associated with Bestcomp's PPO network.

[19]Further, Plaintiff's description of its claims indicates that its claims against the other Defendants as group purchasers may be specious.  La. R.S. 40:2202(3).  It does not appear that CCMSI, Advantage Health, or StrataCare in fact contracted with medical providers, and thus they may not be "group purchasers" as a matter of law, see Touro Infirmary v. American Maritime Officer, 24 So. 3d 948, 950-51 (La. App. 4 Cir. 2009), despite Plaintiff's allegations in its Amended Petition.  The Court is cognizant of the significant pressures that certification of a class action may place on defendants if this class action is eventually certified at the state level.  However, the question of which entities are properly classified as "group purchasers" is an issue that is more properly addressed on a Motion to Dismiss or a Motion for Summary Judgment.  Because this Court is deprived of jurisdiction, it does not address the propriety of certification under Rule 23 or comment on the merits of Plaintiff's claim against Advantage Health, CCMSI, and StrataCare.

defendants fought remand on the grounds that Med-Comp was not a "significant defendant."  The Fifth Circuit held that Med-Comp's alleged conduct was the "common denominator with all the other defendants." Id. at *3.  The court further found that Med-Comp's alleged conduct not only formed the basis of all claims against itself, but also formed a "significant basis of the claims against the other defendants." Id.  In the present controversy, it is Bestcomp who is the operator of the PPO network and the other defendants administered claims pursuant to the discounts that Bestcomp had brokered. Thus, the claim against Bestcomp forms a significant basis of the claims against the other defendants and Bestcomp is therefore a "significant defendant."

Defendants counter, however, that even if the proposed class's claims concern only discounts taken pursuant to Bestcomp's PPO Network, Plaintiff's alter-ego claim makes the conduct of CCMSI and Advantage Health the conduct which forms a significant basis for the proposed class's claims.  Defendants attempts to shift the conduct of Bestcomp to the conduct of CCMSI and Advantage Health, however, are misplaced.  While Plaintiff may be able to shift liability from Bestcomp to Bestcomp's shareholders pursuant to its alter ego claim, the conduct at issue remains the authorized conduct of Bestcomp through its agents.  Bestcomp is and remains primarily liable for its own conduct in violation of La. R.S. 40:2203.1.  The alter ego theory is simply a mechanism by which the court ignores the limited liability that accompanies incorporation.  If CCMSI and Advantage Health, as shareholders, are held vicariously liable on an alter-ego basis, which will turn on separate factual circumstances, see Riggins v. Dixie Shoring Co., Inc., 590 So. 2d 1164 (La. 1991), then CCMSI and

Advantage Health will be held liable for Bestcomp's conduct.  The question of whether

CCMSI and Advantage Health can be held liable as alter-egos of Bestcomp is secondary

to the question of whether Bestcomp is liable for Bestcomp's violations of the PPO Act.

Thus, the alter ego claim does not shift the conduct at issue from Bestcomp to its

shareholders.

Second, Defendants counter that the relief sought from Bestcomp is in-fact just

"small change" when compared to the relief sought from the other Defendants because

Bestcomp is effectively insolvent.  See Robinson v. Cheetah Transp., 2006 WL 468820,

*3 (W.D. La. Feb. 27, 2006) (Hayes, M.J.).  The "small change" rule originates from the

Senate Report to CAFA, S. Rep. 109-14 at 39-40 (2005), as reprinted in 2005 U.S.C.A.N.

3, 38.  The Report gives two examples that illustrate how the Senate Committee intends

CAFA's local-controversy exception to work.  The second example states what courts

have relied on in stating the "small change" rule:

> A class action is brought in Florida against an out-of-state automobile
> manufacturer and a few in-state dealers, alleging that a certain vehicle
> model is unsafe because of an allegedly defective transmission. The
> vehicle model was sold in all fifty states but the class action is only
> brought on behalf of Floridians. This case would not fall within the Local
> Controversy Exception for two reasons. First, the automobile dealers are
> not defendants whose alleged conduct forms a significant basis of the
> claims or from whom significant relief is sought by the class. Even if the
> plaintiffs are truly seeking relief from the dealers, that relief is just small
> change compared to what they are seeking from the manufacturer.
> Moreover, the main allegation is that the vehicles were defective. In
> product liability cases, the conduct of a retailer such as an automobile
> dealer does not form a significant basis for the claims of the class
> members. . . .

S. Rep. 109-14 at 39-40.

The "small change" rule, despite Defendants' protestations, is simply not applicable in this case.  In this case, Bestcomp is not some lowly, small-time defendant roped into this action to serve as an anchor for state court jurisdiction.  Bestcomp is exposed to significant liability as the party who contracted directly with the medical providers to form the Bestcomp PPO network.  The notice provided for Bestcomp's PPO discounts form a significant basis (if not the crux) of Plaintiff's claims.  In comparison, the other Defendants, CCMSI, Advantage Health, and StrataCare, may be, depending on the proper scope of the "group purchaser" definition, liable for the notice given for Bestcomp's PPO discounts simply due to the fact that they were tied to Bestcomp.  See, supra, fn.19.  Further, the prospect of significant recovery against or through Bestcomp is clearly possible.  This is not a case, as with the local car dealer, where a local defendant is joined despite the fact that recovery prospects are clearly limited.  Bestcomp is the party who appears to be exposed to the most financial liability at this stage, and Plaintiffs appear to be seeking full relief from Bestcomp.[20]  This Court refuses to wade into a "factual swamp" to assess Bestcomp's actual financial viability.  Coleman

[20]This case is distinguishable from Robinson, in which the proposed plaintiff class claimed that the driver of the tractor-trailer, a local Louisiana citizen, was a defendant from who significant relief was sought.  The other defendants to the lawsuit were larger out-of-state national companies engaged in the trucking/railroad industries and insurance.  Magistrate Judge Hayes noted that, as the driver of the tractor-trailer, the driver's alleged negligence "may have substantially contributed to the class members' damages."  However, common knowledge dictated that plaintiffs would actually seek relief against the corporate defendants, not the local truck driver.  Further, Magistrate Judge Hayes noted that the class members had failed to execute service of process on the driver as of the date of her ruling regarding subject matter jurisdiction under CAFA.  Magistrate Judge Hayes found that the putative class representative "has failed to provide any evidence that significant relief is sought from [the driver]."  Therefore, the local controversy exception did not apply.  Robinson, 2006 WL 468820, at *4.

v. Estes Exp. Lines Inc., 631 F.3d 1010, 1019 (9th Cir. 2011); Coffey v. Freeport

McMoran Copper & Gold, 581 F.3d 1240, 1245 (10th Cir. 2009).[21]

    **C.**    **The principal injuries were incurred in Louisiana**.

    The Court finds that, given that the Amended Complaint states claims against

Defendants only for violations of Louisiana law for medical services rendered in

Louisiana, the principal injuries alleged were incurred in Louisiana.  The Senate Report,

in addition to its explanation of why the local car dealers were not significant

defendants in its example, further explained that the injuries incurred in the example

were not principally in-state:

> . . . Second, the case falls outside the Local Controversy Exception
> because the "principal injuries resulting from the alleged conduct,"–i.e.,
> selling a vehicle with a defective transmission–were incurred in all fifty
> states. The fact that the suit was brought as a single-state class action
> does not mean that the principal injuries were local. In other words, this
> provision looks at where the principal injuries were suffered by everyone
> who was affected by the alleged conduct–not just where the proposed
> class members were injured. Thus, any defendant could remove this case
> to federal court.

S. Rep. 109-14 at 39-40.  In this case, everyone who was affected by the alleged

violations of the Louisiana PPO Act provided medical services in Louisiana.  Therefore,

this third element of the local-controversy exception is satisfied.

    **D.**    **There have been no similar "class actions" filed against these Defendants**

---

[21]Even if Bestcomp is truly insolvent and judgment proof, recovery may still be possible through Bestcomp by recover against its alleged alter egos.  If judgment is rendered against Bestcomp, and then judgment is rendered that CCMSI and Advantage Health are the alter egos of Bestcomp, then significant relief is still available through Bestcomp.

_____Defendants contend that they have been named as defendants in similar class actions filed in the three years preceding this lawsuit.  Defendants contend that, because they have been named as third-party defendants to separate class actions filed against other defendants, subsection (A)(ii) is triggered and thus remand of this matter is inappropriate.

28 U.S.C. § 1332(d)(4)(A)(ii) provides that the local-controversy exception will not apply if, during the 3-year period preceding the filing of that class action, another "class action" has been filed "asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."

There have been no similar "class actions" filed against Defendants in this matter filed in the three-year period preceding this class action.  A third-party demand asserted by a defendant to a class action against a third-party defendant is not a "class action." See 28 U.S.C. § 1332(d)(1)(B) ("[T]he term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.").  Any related class actions initiated by Plaintiff against other separate entities, to which Bestcomp and StrataCare have been named as third-party defendants, do not constitute class actions filed "against" any of the Defendants in this matter.  Thus, the "exception to the exception" of subsection (A)(ii) does not create jurisdiction for this Court over this matter.

## III.  Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand [Record Document 5] be and is hereby **GRANTED**, and this case be and is hereby **REMANDED** to the 27th Judicial district court, St. Landry Parish, Louisiana.

**IT IS ORDERED** that Defendants' Motions to Strike [Record Documents 21, 27, and 30] be and are hereby **DENIED**.

**IT IS FURTHER ORDERED** that all other pending motions [See Record Documents 7, 8 and 13] be and are hereby **DENIED** as moot.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 26th day of September, 2011.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE